# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RIDE RIGHT, LLC, | ) |
| Plaintiff, | ) |
| v. | ) No. 18-cv-01119 |
| PACE SUBURBAN BUS, | ) Judge Andrea R. Wood |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This case concerns a contract dispute between Plaintiff Ride Right, LLC ("Ride Right") and Defendant Pace Suburban Bus ("Pace"), a division of the Regional Transportation Authority. In April 2015, Pace hired Ride Right to provide paratransit services for Kane County, Illinois for an eight-year term starting July 1, 2015. But a disagreement subsequently arose between the parties over the number of service hours that Pace assigned to Ride Right, with Ride Right claiming that Pace misled it during the competitive bidding process by providing estimates that Pace knew to be inflated and inaccurate. In this lawsuit, Ride Right asserts claims against Pace for fraudulent inducement (Count I) and breach of the duty of good faith and fair dealing (Count II). Ride Right also seeks a declaratory judgment that the parties' contract is unenforceable due to a lack of mutuality of obligation (Count III) and unconscionability (Count IV). Now before the Court is Pace's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 12.) For the reasons explained below, Pace's motion is granted in part and denied in part.

**BACKGROUND**

The Court accepts as true the well-pleaded facts in Ride Right's complaint and views those facts in the light most favorable to Ride Right as the nonmovant. *See Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 826–27 (7th Cir. 2015). Ride Right has alleged as follows.

On December 22, 2014, Pace published Request for Proposal No. 414379 ("RFP"), seeking a qualified paratransit service provider for an eight-year service contract in the Kane County, Illinois region. (Compl. ¶ 6, Dkt. No. 1.) The RFP included a form contract and exhibits. (*Id.* ¶ 7.) Pace indicated that the contract would be awarded by evaluating the technical and price proposals submitted by the bidders. (*Id.* ¶ 8.) Exhibit G of the RFP provided pricing proposal instructions and asked bidders to propose their fixed hourly rates based on the average estimated number of service hours to be provided. (*Id.*) Pace listed the "estimated annual hours" for each of the eight years to be covered by the contract, which gradually increased from 53,928 hours in year one to 70,965 hours in year eight. (*Id.*) Pace also stated that the estimated annual hours should be the key factor for bidders in determining what hourly rate to propose. (*Id.*) Further, the RFP indicated that the contract would grant Pace liquidated damages against the service provider if it failed to meet monthly "productivity" standards. (*Id.* ¶ 9)

Ride Right calculated and submitted its price proposal based on Pace's estimated annual hours; specifically, the 53,928 estimated annual hours for year one. (*Id.*) At a "Best and Final Offer" meeting between the parties on March 13, 2015, Pace expressly advised Ride Right that the estimated annual hours provided on Exhibit G of the RFP were "correct and not to be modified." (*Id.* ¶ 13.) Consequently, Ride Right did not modify its price proposal. (*Id.*)

In April 2015, Pace awarded Ride Right the contract. (*Id.* ¶ 14.) In preparation for its new contract obligations, Ride Right hired additional personnel and leased a larger space for

operations to ensure that it could meet the staffing and performance obligations mandated by Pace under the contract. (*Id.* ¶ 15.) Ride Right also purchased maintenance and digital equipment. (*Id.* ¶ 16.)

However, after Ride Right began performing under the contract in July 2015, it became apparent that the actual service hours were far below the estimated hours provided by Pace in the RFP. (*Id.* ¶ 16.) On October 23, 2015, Ride Right met with Pace's Project Manager to discuss issues pertaining to revenue hours and productivity. (*Id.* ¶ 17.) Ride Right expressed concern that based on the current trend, it would be 20,000 hours short of Pace's estimated annual hours for year one. (*Id.*) Pace's Project Manager told Ride Right to prepare additional data concerning these issues, which he would present up the chain of command. (*Id.* ¶ 18.)

After Ride Right provided additional information and met with the Project Manager a second time, the parties met on January 29, 2016 to discuss Ride Right's concerns. (*Id.* ¶¶ 19–21.) Pace advised Ride Right that while it understood there was a 41% difference between its estimated annual hours and the actual hours, Pace would not increase Ride Right's contracted hourly rate. (*Id.* ¶ 21.) However, Pace also stated that it would lower the monthly productivity standard and lift (or possibly even refund) the liquidated damages provision. (*Id.*) Pace also discussed potential adjustments to Ride Right's staffing and fleet, which required Pace's approval, to assist with overhead costs, and the possibility of re-assigning trips from other providers to Ride Right. (*Id.*)

Over the next 17 months, Pace continually represented that it would work with Ride Right to stem its losses but ultimately delayed in responding or completely failed to act. (*Id.* ¶ 22.) On August 31, 2016, Ride Right sent a letter to Pace stating that none of the changes discussed in their January 29 meeting had been implemented (other than the lowered

productivity level). (*Id.* ¶ 23.) The letter also informed Pace that Ride Right was losing an average of $37,058 per month on the contract and repeated that Ride Right needed an hourly rate increase to break even on the contract. (*Id.*) The parties met and communicated multiple times between October 2016 and March 2017 to discuss the issue. (*Id.* ¶¶ 24–30.) They again discussed implementing certain changes to increase Ride Right's hours, and Ride Right repeatedly expressed its need for an hourly rate increase. (*Id.* ¶¶ 24–30.)

Finally, Ride Right's CEO sent a letter to Pace on April 11, 2017, accusing Pace of providing substantially-inflated estimates on the RFP and causing Ride Right unsustainable financial losses. (*Id.* ¶ 29.) On June 27, 2017, Pace provided a written response denying Ride Right's accusation and claiming that the estimates were calculated based on nine months of billable hours from 2014. (*Id.* ¶ 31.) Pace also declared that Ride Right was not entitled to a reimbursement or price increase and that it would be held to the prices that it had proposed. (*Id.*)

On August 2, 2017, Ride Right submitted a Freedom of Information Act ("FOIA") request to Pace, requesting the monthly service hours of MV Transportation, Ride Right's predecessor in its contract with Pace. (*Id.* ¶ 32.) In late August and early September 2017, Ride Right received Pace's response to the FOIA request, which confirmed that Pace had listed false and inflated estimated annual hours on the RFP. (*Id.* ¶ 33.) Based on the MV Transportation data, Pace's estimate of 53,928 hours for year one could not be calculated even using the nine most productive months of service. (*Id.*) By the time it filed suit, Ride Right had incurred losses of approximately $500,000 each year from its contract with Pace, totaling more than $1.5 million. (*Id.* ¶ 38.)

**DISCUSSION**

"A motion under [Federal Rule of Civil Procedure] 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). The basic pleading requirement is set forth in Federal Rule of Civil Procedure 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." The short and plain statement must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). Further, Federal Rule of Civil Procedure 9(b) establishes a heightened pleading standard for all "averments of fraud," regardless of whether those averments pertain to a cause of action for fraud. *See Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007).

### I. Count I—Fraudulent Inducement

The Court first turns to Count I of Ride Right's complaint, which claims fraudulent inducement by Pace. Under Illinois law,[1] to state a claim for fraudulent inducement, a plaintiff must allege: "(1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012) (internal quotation marks omitted).

---

[1] On a procedural note, this Court's subject-matter jurisdiction is properly invoked pursuant to 28 U.S.C. § 1332, as Ride Right is a citizen of Missouri and Pace a citizen of Illinois. (*See* Joint Initial Status Rept. ¶ 1.C., Dkt. No. 16.) Furthermore, the parties do not dispute that Illinois law applies to Ride Right's claims.

5

Ride Right here alleges that Pace, by and through its agents, provided estimated annual hours in the RFP that Pace knew to be false and inflated, to induce Ride Right to submit a lower hourly rate than it would have otherwise bid. Ride Right also alleges that at a meeting in March 2015, Pace expressly confirmed that the estimates were "correct and not to be modified." (Compl. ¶ 13) Consequently, Ride Right reasonably relied on the false and inflated estimated annual hours in calculating its hourly rate, submitted a bid that was unsustainably low based on the actual annual hours, and suffered financial harm. Based on these allegations, Ride Right has sufficiently described the "who, what, when, where, and how" of its fraudulent inducement claim. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011).

While Pace argues that Ride Right has not pleaded fraudulent inducement because Pace merely "sought to obtain the best possible contract through a competitive bidding process" (Def.'s Mem. of Law in Support of its Mot. to Dismiss at 12, Dkt. No. 13), Ride Right has alleged that its FOIA request revealed that Pace provided estimates that were wholly unsupported by historical data. *See HALO Branded Sols., Inc. v. Goldman*, 784 F. Supp. 2d 966, 976 (N.D. Ill. 2011) (holding that a reasonable jury could find fraudulent misrepresentation where defendant estimated a $150,000 loss, even though other data indicated a $400,000 loss); *Lyon Van Lines, Inc. v. Advanced Sys., Inc.*, No. 85 C 05266, 1985 WL 3473, at *2 (N.D. Ill. Oct. 23, 1985) (holding that a party makes a knowingly false statement of existing fact by providing an estimate that it knows is "not a true approximation"). Therefore, Ride Right has met the heightened pleading standard in Rule 9(b).[2]

---

[2] "It is well-settled that claims for fraudulent misrepresentation are subject to Rule 9(b)'s heightened pleading standard." *Petrakopoulou v. DHR Intern., Inc.*, 660 F. Supp. 2d 935, 937 (N.D. Ill. 2009) (summarizing cases).

Pace also points out that the allegedly fraudulent misrepresentations pertain to future conduct and argues that they are not actionable as false statements under Illinois law. It is true that in Illinois, "the general rule denies recovery for fraud based on a false representation of intention or future conduct." *Steinberg v. Chi. Med. Sch.*, 371 N.E.2d 634, 641 (Ill. 1977). But Illinois also recognizes an exception to the general rule: promissory fraud claims are permitted where "a party makes a promise of performance, ***not intending to keep the promise*** but intending for another party to rely on it, and where the other party relies on it to his detriment." *Bower v. Jones*, 978 F.2d 1004, 1012 (7th Cir. 1992) (emphasis added). Under this scheme-to-defraud exception, promissory fraud is actionable if it is "particularly egregious or, what may amount to the same thing, it is embedded in a larger pattern of deceptions or enticements that reasonably induces reliance and against which the law ought to provide a remedy." *Desnick v. Am. Broad. Cos., Inc.*, 44 F.3d 1345, 1354 (7th Cir. 1995) (applying Illinois law); *see also Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862, 866 (7th Cir. 1999) (describing the scheme to defraud exception as "a pattern of fraudulent acts").

Ride Right has alleged that Pace engaged in a fraudulent scheme by issuing RFPs with unrealistic and unsupported estimates to trap prospective bidders like Ride Right into unprofitable contracts. *See Petrakopoulou v. DHR Int'l, Inc.*, 660 F. Supp. 2d 935, 939 (N.D. Ill. 2009) (applying scheme-to-defraud exception where "[plaintiff's] complaint claims that [defendant's] alleged misrepresentations are part of a larger scheme to lure executive recruiters such as herself away from competing firms by means of sham employment agreements"). According to Ride Right, Pace had no basis for its estimates and no intention of providing the winning bidder with anywhere near the number of estimated hours. Moreover, Pace made repeated false assurances over a two-year period that it would increase Ride Right's hours and

7

take other action to alleviate Ride Right's financial suffering. *See Maurice Sporting Goods, Inc. v. BB Holdings, Inc.*, No. 15-cv-11652, 2017 WL 2692124, at *5 (N.D. Ill. June 22, 2017) (applying scheme-to-defraud exception where complaint alleged "a series of strategic misrepresentations that were embedded in a larger pattern of deception intended to induce [] reliance"). Therefore, the Court finds that Ride Right's fraudulent inducement claim falls within the scheme-to-defraud exception.

Finally, Pace attacks the materiality and reliance elements of Ride Right's claim by invoking the "bespeaks caution" doctrine. *See Avon Hardware Co. v. Ace Hardware Corp.*, 998 N.E.2d 1281, 1288 (Ill. App. Ct. 2013). This doctrine provides that cautionary language may negate the materiality of an alleged misrepresentation or the reasonableness of a plaintiff's reliance on the misrepresentation. *Id.* Statements must be analyzed in context to determine whether cautionary language is "sufficiently substantive and tailored to the projections, estimates, and opinions contained in an offering document[] [as to] render alleged misrepresentations and omissions immaterial as a matter of law." *Id.* (internal quotation marks omitted).

Pace points to a disclaimer in the RFP that its estimated annual hours were "provided for bid evaluative purposes only and do not represent a firm commitment to purchase." (Compl. Ex. 2 at 277, Dkt. No. 1-2.)[3] The Court finds Pace's argument unpersuasive for several reasons. First, Pace instructed bidders to use its estimates in calculating their hourly rates. (*Id.* at 276.) According to Exhibit G's instructions, all bidders had to submit a complete fixed-cost detail sheet for consideration, which required calculation of their proposed annual fee by multiplying

---

[3] Under Federal Rule of Civil Procedure 10(c), "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Here, Ride Right attached a copy of the RFP to its complaint, and therefore, the Court may consider it in ruling on Pace's motion to dismiss.

8

their hourly rates by Pace's estimated annual hours. (*Id.* at 277.) Second, it is reasonable to infer that Pace understood offering more hours would induce bidders to offer lower rates. This understanding is reflected in the fixed-cost detail sheet, which asks bidders to provide their hourly rates for four ranges of weekly service hours: 1–50, 50–150, 150–200, and above 200.[4] (Compl. Ex. 2 at 277.) Similarly, the fixed-cost detail sheet asks bidders to provide their hourly rates for each of the eight years under contract, with no difference between each year except a gradual increase in the estimated annual hours. (*Id.* at 277–81.) In this context, Pace's claim that Ride Right should have exercised "a healthy skepticism" and interpreted its estimates as nothing more than "an expression of hope" rings hollow. (Def.'s Mem. of Law in Support of its Mot. to Dismiss at 9.) To be clear, the Court is not holding that Ride Right may demand from Pace the exact number of service hours listed in the RFP. Rather, the Court finds the single line of cautionary language in the RFP insufficient to render Pace's estimates, which were off by over 40% (Compl. ¶ 21), immaterial as a matter of law. *See Harden v. Raffensperger, Hughes & Co., Inc.*, 65 F.3d 1392, 1406 n.12 (7th Cir. 1995) (holding that the "bespeaks caution doctrine does not, as a matter of law, offset the materiality of [the alleged misrepresentation]" but "emphasiz[ing] that our ruling should in no way be construed as indicating our view on the ultimate outcome of this case").

      For these reasons, the Court denies Pace's motion to dismiss Ride Right's fraudulent inducement claim.

---

[4] Pace also contends that it warned Ride Right in the RFP that daily service hours could fluctuate between one and 200 hours, and that this warning suffices to bar Ride Right's fraud claim. It is unclear, however, how cautionary language regarding daily hours provides fair warning as to Ride Right's annual hours. Further, following Pace's argument to its logical conclusion, Pace could rightfully assign Ride Right as few as 365 hours per year.

**II.     Count II—Breach of the Implied Duty of Good Faith and Fair Dealing**

The Court turns next to Count II, in which Ride Right contends that Pace breached the implied duty of good faith and fair dealing implicit in every contract under Illinois law. *See Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 395 (7th Cir. 2003) (applying Illinois law). However, the duty does not provide an independent cause of action. *APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 628 (7th Cir. 2002) (applying Illinois law). Instead, a breach of the implied duty, if anything, gives rise to a breach of contract claim. *See, e.g.*, *Newman v. Spirit Airlines*, No. 12 C 2897, 2012 WL 3134422, at *2 (N.D. Ill. July 27, 2012) (construing breach of duty of good faith and fair dealing as breach of contract). Accordingly, the Court construes Count II as a breach of contract claim.

Pace argues that it did not breach any terms of the parties' written contract. But to establish a breach of the duty of good faith and fair dealing, Ride Right need only show that the contract vested Pace with discretion in performing an obligation under the contract and that Pace exercised its discretion "in bad faith, unreasonably, or in a manner inconsistent with the reasonable expectations of the parties." *LaSalle Bank Nat'l Assoc. v. Paramont Props.*, 588 F. Supp. 2d 840, 857 (N.D. Ill. 2008); *see also Gore v. Ind. Ins. Co.*, 876 N.E.2d 156, 161 (Ill. App. Ct. 2007) (explaining that the purpose of the duty is "to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract").

Here, the contract vests Pace with complete control and discretion over the number of service hours assigned to each of its service providers, including Ride Right. And as alleged in the complaint, Ride Right reasonably expected that Pace would assign approximately 53,000 hours during year one, as indicated on the RFP. Nonetheless, according to Ride Right, Pace

abused its discretion and acted in bad faith by assigning Ride Right 40% fewer hours than expected—something that Pace had planned on doing all along. Moreover, the complaint contains other allegations supporting Pace's unilateral abuse of its discretion, such as Pace's repeated assurances that it would increase Ride Right's hours but its ultimate refusal to do so. (*Id.* ¶¶ 21, 25); *see The Original Great Am. Chocolate Chip Cookie Co. v. River Valley Cookies, Ltd.*, 970 F.2d 273, 280 (7th Cir. 1992) (holding that the duty prohibits parties from "taking advantage of gaps in a contract in order to exploit the vulnerabilities that arise when contractual performance is sequential rather than simultaneous"). Based on these allegations, Ride Right has adequately stated a claim for breach of contract. Therefore, the Court denies Pace's motion to dismiss Count II.

### III. Counts III and IV—Declaratory Relief for Lack of Mutuality and Unconscionability

With its final two counts, Ride Right asks the Court to issue a declaratory judgment freeing it from the remainder of its eight-year contract with Pace. Ride Right asserts that the contract is unenforceable as a matter of law for two reasons: lack of mutuality and unconscionability. The Court, however, declines to invalidate the contract on either ground.

The Illinois Supreme Court has recognized that a plaintiff may seek invalidation of a contract based on a lack of mutuality of obligation. *See Carter v. SSC Odin Operating Co., LLC*, 976 N.E.2d 344, 351 (Ill. 2012) (adjudicating plaintiff's request that arbitration agreement be deemed unenforceable as a matter of law). "'In its most elemental sense, the doctrine of mutuality of obligation means that unless both parties to a contract are bound by its terms, neither is bound.'" *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 507 (7th Cir. 2013) (quoting *Schwinder v. Austin Bank of Chi.*, 809 N.E.2d 180, 183 (Ill. App. Ct. 2004)). "The concept of lack of mutuality is intimately tied to the concept of consideration." *Carter*, 976

N.E.2d at 351 (internal quotation marks omitted); *see also Vassilkovska v. Woodfield Nissan, Inc.*, 830 N.E.2d 619, 624 n.2 (Ill. App. Ct. 2005) (holding that mutuality is "nothing more than a proxy for consideration"). Mutuality does not require that the parties' obligations be identical. *See Carter*, 976 N.E.2d at 353 (finding that plaintiff's contractual obligation to arbitrate, "even if not met with a reciprocal promise to arbitrate by defendant," was supported by consideration). Rather, to show lack of mutuality, Ride Right must establish that it was induced to enter the contract by an illusory promise; only in such a situation will the contract be invalidated for lack of consideration. *Id.* at 351.

"An illusory promise appears to be a promise, but on closer examination reveals that the promisor has not promised to do anything." *Id.* Ride Right contends that "***all*** of Pace's promises are illusory because an express provision in the contract gives Pace the unilateral right to terminate the contract at any time, without cause and without penalty." (Pl.'s Resp. to Def.'s Mot. to Dismiss at 13, Dkt. No. 23.) But versions of this argument have been soundly rejected by both the Seventh Circuit and the Illinois appellate court. In *Burke*, for example, the plaintiff sought a declaratory judgment based on lack of mutuality because the contract penalized the plaintiff more severely for a breach than the defendant and arguing that the defendant "can breach at will and all he has to do is give [plaintiff's] money back." 714 F.3d at 508. The Seventh Circuit explained that the implied duty of good faith and fair dealing under Illinois law served as a gap-filler to preserve the contract and prevent the defendant's breach. *Id.* Similarly, in *Schwinder*, the Illinois appellate court rejected the plaintiff's argument of lack of mutuality based on a contract provision allowing the defendant to terminate the purchase agreement at any point. 809 N.E.2d at 194–95. The *Schwinder* court reasoned that the duty of good faith and fair

dealing applied to the provision of the contract granting the defendant the right of termination, with the result that there were mutually binding obligations on both parties. *Id.* at 195.

As explained above, the implied duty of good faith and fair dealing applies to the contract between Ride Right and Pace. Thus, Pace has an obligation to exercise good faith in assigning hours to Ride Right and to avoid terminating the contract, as well as an obligation to exercise its right of termination in good faith; specifically, if Pace terminates the contract for any reason other than Ride Right's breach, Pace must pay cancellation charges equal to the remaining unpaid costs accrued and obliged date of cancellation. In light of Pace's obligations under the contract, Ride Right has not shown that the contract fails for lack of mutuality and therefore this claim cannot proceed.

The Court also finds that the contract is not void for unconscionability. Whether a contract is unconscionable is a question of law for the Court. *Hanover Ins. Co. v. N. Building Co.*, 751 F.3d 788, 794 (7th Cir. 2014). Under Illinois law, "a finding of unconscionability may be based on either procedural or substantive unconscionability, or a combination of both." *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 263 (Ill. 2006). Count IV asserts substantive unconscionability, which "concerns the actual terms of the contract and examines the relative fairness of the obligations assumed." *Sanchez v. CleanNet USA, Inc.*, 78 F. Supp. 3d 747, 756 (N.D. Ill. 2015). The Court examines the contract for terms that are "so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity." *Id.*

Ride Right argues that its contract with Pace is unconscionable because it gives Pace complete control over how many hours are assigned to Ride Right, allows Pace to terminate the contract unilaterally, and is causing Ride Right to lose approximately $500,000 per year.

However, "courts are reluctant to use unconscionability to re-write the terms of contracts into which sophisticated businessmen enter." *Am. Guardian Warranty Servs., Inc. v. JCR-Wesley Chapel, LLC*, 2018 WL 2688850, at *2 (N.D. Ill. June 5, 2018). And here, Ride Right describes itself as an "experienced team of professionals" (Def.'s Mem. in Support of its Mot. to Dismiss, Ex. 3 at 191, Dkt. No. 13-3) and does not deny that it is a sophisticated party that had ample opportunity to review the terms of the contract before being bound. *See River Valley Cookies*, 970 F.2d at 281 ("[Plaintiffs] are not vulnerable consumers or helpless workers. They are business people . . . [T]hey were not forced to swallow unpalatable terms. They have rightly declined even to argue unconscionability."). Accordingly, Ride Right cannot plausibly claim that it was unfairly surprised by the actual written ***terms of the contract***—instead, if anything, Ride Right was surprised by Pace's ***performance***. Additionally, as explained above, the contract provision giving Pace the right to terminate the contract at any time provides protections for Ride Right as well, in the form of cancellation charges. *Cf. Gleike Taxi Inc. v. Challenger CAB, LLC*, 2016 WL 1450048, at *8 (N.D. Ill. Apr. 13, 2016) (finding unconscionability where there was "no real remedy available to [plaintiff] if [defendant] breached material terms of the agreement"). Finally, the fact that Ride Right is losing a substantial amount of money under the contract does not render the contract unconscionable. *See Al Maha Trading & Contracting Holding Co. v. W.S. Darley & Co.*, 936 F. Supp. 2d 933, 943 (N.D. Ill. 2013) (rejecting unconscionability claim even though the plaintiff alleged losses of almost $3 million).

Ultimately, none of the contract provisions identified by Ride Right are so one-sided that "no one in his right mind would have agreed to" them. *River Valley Cookies*, 970 F.2d at 281 (internal quotation marks omitted). Therefore, the Court finds that Ride Right has not stated a claim of unconscionability.

## CONCLUSION

For the foregoing reasons, Pace's motion to dismiss is granted in part and denied in part. The motion is granted as to Counts III and IV; those counts are dismissed with prejudice. The motion is otherwise denied.

ENTERED:

Dated: December 10, 2018

_____
Andrea R. Wood
United States District Judge